The Court delivered its opinion as follows:
Johnston, Ch.
Taking up the appeal of C. & C. Clarke» in the first instance, I have to observe: That according to the practice of the Law Court, while I was at the bar, and according to the older cases, such as Summers v. Caldwell and others, reported in our books, the money collected on the executions of William Clarke, prior to his assignment of them, would have been applied to the executions against him in the sheriff’s hands; and of course the assignee, taking subject to all equities and incumbrances existing at the time of the assignment, would have no claim to such money. It appears, however, that later decisions by the Law Courts, (which are binding on us,) have varied this doctrine; and that the rule now is, that an assignment, before an actual and formal application of the money to the executions against •the party for whom the money is collected, transfers the right to the money to the assignee, and prevents its application according to the older cases. To these decisions:I must yield, whether I perceive their correctness or not; and they are sufficient to sustain the claim of C. <fc C. Clarke to the money collected before the assignment made to them.
If this be so, a fortiori, the assignment gives them a good right to all money afterwards collected on the executions previously lodged; and, with still stronger reason, establishes their right to money afterwards collected on executions after-wards obtained and lodged.
I turn now to the appeal taken by McKenna and Mcllwain.
One of the grounds taken is, that the Chancellor’s decision in relation to interest is erroneous.
It is a general rule that interest will not be allowed upon a bond beyond its penalty, any more in equity than at law. But where parties to an obligation come into this Court, asking its active interposition on their behalf, they must do what equity and justice demand, as a condition of the Court’s interference.
These plaintiffs, by the very act of filing their bill, admitted that the official creditors of Secrest, their principal, were entitled to be paid out of their aliquot share of the bond to which they had made themselves parties. When they called in those creditors to present and establish their demands here, and enjoined them from proceeding at law, they were bound *165 to pay their share of the penalty into Court, and to throw no unnecessary obstruction in the way, to procrastinate their re-, covery of what was due them. *
Ves. 79, cited Grant v. Grant, 5 Cond. E. Ch. 155.
5 Cond. Eng. Cl1-155;
17 ves. ice.
3 Caine’s cases> 481
2 Strob. Rep. 113-
Instead of paying the money into Court, however, these plaintiffs withheld it, while interest was accumulating on the demands to which it should have been applied. Lord Eldon, in the case of Pulteney v. Warren, speaking of Duvall v. Terry, says — “The decree for principal and interest beyond the penalty of the bond, was affirmed upon the very ground that the party was prevented from going- on at law while the demand was.under the penalty.” “That is the way” says the vice Chancellor in Grant v. Grant, “in which Lord Eldon represents the case ; and. it is in substance a true representation of-it; and he applied the principle of that case to the circumstances of the case of Pulteney v. Warren, which, arose on the ground of the conduct adopted by Warren, one of the lessees on the Pulteney estate; and he gave an account, which was continued far beyond the time it would have been continued to, but for- the conduct of Warren. The same principle seems to have been adopted in Clarke v. Lord Abingdon, and the other cases which were mentioned at the bar; all of which go to support the principle, which is merely founded on this, that if a. party chooses, by improper proceedings, to prevent a creditor from having payment as soon as the creditor ought, these- proceedings shall not operate to the prejudice of the creditor; but he shall be-considered as entitled to receive what is really due to him ; and notwithstanding there is a form of penalty in the bond, that shall not be the limitation of what shall be recovered by him.”
See, also, on this subject the case of Smedes v. Hooghtaling, and the note appended to it.
When the creditors were called in and-, enjoined from, proceeding at law, this was. equivalent to saying they were entitled to what a Law Court would, at that time, have given them judgment for; and in the casé of the State v. Wylie, it was held that the interest accruing after judgment is to be allowed beyond the penalty ; and Withers, J. says, “ I held, that they” (the sureties of Wylie, who was sheriff of Pair-field) “ were not entitled to any credit for costs which accrued in the litigation of other creditors against them, for I could not conceive how the creditors of the sheriff should receive, among them, what the law allowed, to wit: the whole penalty, if costs arising from the default of the sureties and their principal, paid, (as they were) to various officers of Court, should be deducted from the creditors’s fund; and, for the like reason, I excluded the item of interest from the calculation, arising, as that did, from the peculiar default of the defendants. If the sureties” he adds, “ had gone into a Court *166 of Equity, I believe that jurisdiction would have required them to pay into Court the whole penalty of the bond, which would have been invested, and the creditors might have had ■ interest on the penalty.”
Burge on Suretyship, 324, citing 9 East. 35, and JO B. & C. 93.
The last ground relates to the $1020 received by McKenna from the sale of Secrest’s house and lot.
It is true that in the case of Secrest v. McKenna, it was intimated that as between Secrest and his private creditors on the one hand, and McKenna on the other, McKenna was entitled to hold this money to indemnify him for what losses he might sustain as surety on Secrest’s official bond. But the difference between those creditors and these is this, that Mc-Kenna was no surety and in no manner bound for the debts which Secrest owed the former. Their demands had no lien on the house and lot, and therefore, their claim to be paid out of the proceeds of the premises was merely an equity, and McKenna had an equal equity, to which was superadded the further circumstance, that the title to the house and lot, though paid for by Secrest, was still in McKenna, the vendor. But in the present case, it is to be considered that McKenna is surety for the very debts to which Secrest, the equitable owner of the property, whose proceeds McKenna has received, should have applied the money. We are to regard the case, therefore, as if Secrest had placed the $1020 in McKenna’s hands. “ A creditor ” says a respectable elementary writer, well supported by authority, “ is entitled to the benefit of all the securities which the principal debtor has given to his surety, as well as those which were given • to the creditor by the principal.”
To the same effect is a passage in Pitman on Principal and Surety, page 88, 40 Law Lib. citing 1 Eq. Ca. Abr. 93, and 11 Ves. 12.
On the whole, I do not perceive any error in the decree against the sureties ; and, as to them, it is ordered that the decree be affirmed and the appeal dismissed.
But as to C. & O. Clarke, it appears the decree was erroneous. Their exception should have been sustained, and it is so adjudged.
It is ordered, that the cause be remanded to the Circuit Court, and the account recommitted to the Commissioner for correction, according tó this opinion.
Dunkin’ and Dargan, CO., concurred.

Decree modified.